HONORABLE JUDGE ROBERT LASNIK
MAGISTRATE JUDGE S. KATE VAUGHAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FOUNDATION AGAINST INTOLERANCE & RACISM INC. DBA FAIR FOR ALL, INC, and FAITH BOOHER-SMITH

Plaintiffs,

v.

WASHINGTON DEPARTMENT OF CORRECTIONS, and TIM LANG,

Defendants.

NO. 3:26-cv-05448-RSL-SKV

MOTION TO DISMISS

NOTING DATE: AUGUST 26, 2026

## I.    INTRODUCTION

Defendants Washington State Department of Corrections and Tim Lang respectfully request the Court dismiss Plaintiffs' complaint for compensatory damages and injunctive relief. The plaintiffs lack standing to bring their claims; the defendants are immune from suit in this Court; and the complaint fails to allege a civil rights violation in any event. This Court should dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (6).

//

//

//

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

1

## II.    TABLE OF CONTENTS

I.      INTRODUCTION............................................................................................... 1

II.     TABLE OF CONTENTS ................................................................................... 2

III.    BACKGROUND................................................................................................ 3

    A.    The Department Allows Transgender, Nonbinary, and Intersex Individuals to Request Gender-Affirming Housing, But It Does Not Automatically Grant Those Requests ............................................................................................ 3

IV.     ARGUMENT .................................................................................................... 4

    A.    This Court Should Dismiss Because It Lacks Subject Matter Jurisdiction .............. 4

        1.    Standards for dismissal under Federal Rule of Civil Procedure 12(b)(1) .......... 4

        2.    Plaintiffs do not have standing to pursue their claims about Policy 490.700 in this Court ................................................................................. 5

            a.    Booher-Smith does not have standing in her own right to challenge Policy 490.700 under the Eighth or Fourteenth Amendments.................... 6

                (1)    Any Eighth Amendment injury to Booher-Smith is not fairly traceable to Policy 490.700 ............................................................. 6

                (2)    Booher-Smith has failed to establish injury-in-fact for a violation of her right to equal protection of the law........................ 8

            b.    FAIR does not have associational standing to challenge Policy 490.700 under the Eighth or Fourteenth Amendments............................. 9

        3.    Defendants are immune from suit in this Court under the Eleventh Amendment .................................................................................. 11

    B.    This Court Should Dismiss Because Plaintiffs Fail to State a Claim For a Violation of 42 U.S.C. § 1983 ................................................................... 14

        1.    Standards for dismissal under Federal Rule of Civil Procedure 12(b)(6) ........ 14

        2.    Defendants are not persons within the meaning of 42 U.S.C. § 1983 ............. 15

        3.    Plaintiffs have not alleged the personal participation of Secretary Lang in any constitutional violation .............................................................. 16

V.      CONCLUSION ............................................................................................... 17

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

2

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

## III.   BACKGROUND

**A.     The Department Allows Transgender, Nonbinary, and Intersex Individuals to Request Gender-Affirming Housing, But It Does Not Automatically Grant Those Requests**

Incarcerated individuals in the custody of the Department may request placement gender-affirming housing, which is housing at facility whose designation as a men's prison or women's prison aligns with the individual's gender identity. Decl. of Katrina Manis (Manis Decl.), Ex. 1 at 7.[1] The Department asks the individual to explain why their requested housing placement will be better for them, how they will benefit from the requested placement, and any concerns they have about the placement. Manis Decl., Ex. 2 at 2.[2] It also asks them to reflect on how their history will indicate a potential risk to the population at the requested facility and how they will reduce that risk. *Id.*

The individual's request is then reviewed by a multidisciplinary team (MDT) at the individual's present facility. Manis Decl., Ex. 1 at 8. Each facility has an MDT that ensures all individuals under the Department's jurisdiction have equal access to programs and services. *Id.* at 4. The team includes the facility's correctional program manager, the captain, a medical provider, a mental health provider, a Prison Rape Elimination Act (PREA) specialist, and the individual's assigned case manager or that person's supervisor. *Id.* The team makes recommendations about housing assignments for transgender individuals based on objective safety protocols and consideration of the individual's desired housing assignment. In line with federal PREA regulations, *see* 28 C.F.R. § 115.42, the individual's own views about personal safety are considered when making recommendations about their housing. Manis Decl., Ex. 1 at 5.

---

[1] A court may consider documents incorporated by reference into the complaint without converting a motion to dismiss under 12(b)(6) to a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Plaintiffs explicitly incorporate this policy by reference at ¶¶ 26–27 of their complaint. *See* Dkt. 1.

[2] Plaintiffs explicitly incorporate this form by reference at ¶¶ 28–29 of their complaint. *See* Dkt. 1.

3

The headquarters MDT then reviews the housing recommendation from the facility. *Id.* at 8. The headquarters MDT consists of the appointing authority from the facility to which a transfer is recommended (typically the superintendent), the chief medical officer for the Department or their designee, the director of mental health, the chief of psychiatry, the senior director of comprehensive case management or their designee, the director of Security and Emergency Management, the director of PREA services, and others as needed on a case by-case bases. *Id.* at 5. After the headquarters MDT makes a recommendation, the Deputy Secretary or their designee makes the final decision on housing. *Id.* at 6, 8.

If an individual's request for gender-affirming housing is denied, the individual may submit a subsequent request at their next classification review. *Id.* at 8. They may also appeal housing decisions, either to the appropriate deputy assistant secretary for decisions made by the facility MDT or to the secretary for decisions made by the headquarters MDT. *Id.* at 9.

The Department's gender-affirming housing procedures are documented in policy number DOC 490.700, Transgender, Intersex, and/or Non-Binary Individuals ("Policy 490.700"). *See* Manis Decl., Ex. 1. The secretary's sole responsibility under the policy is responding to appeals of housing decisions made by the headquarters MDT. *Id.*

### IV. ARGUMENT

**A.    This Court Should Dismiss Because It Lacks Subject Matter Jurisdiction**

The Court does not have jurisdiction over this case. Plaintiffs lack standing to advance their claims under Article III of the United States Constitution, and Defendants are immune from suit in this Court under the Eleventh Amendment.

**1.    Standards for dismissal under Federal Rule of Civil Procedure 12(b)(1)**

Under Rule 12(b)(1), a court must dismiss a case over which it lacks subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). Where a plaintiff lacks standing to invoke the jurisdiction of the federal courts, dismissal under Rule 12(b)(1) is appropriate. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024). Immunity under the Eleventh

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

4

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Amendment is also a proper basis for dismissal under Rule 12(b)(1). *See Forward, Inc. v. Macomber*, 178 F.4th 470, 472 (9th Cir. 2026).

A jurisdictional challenge may be facial or factual. *Bowen*, 118 F.4th 1134, 1142 n.6 (9th Cir. 2024). A facial challenge admits the truth of the allegations in the complaint but asserts they are insufficient to invoke federal jurisdiction. *Id.* A factual challenge disputes the truth of the plaintiff's allegations, usually through outside evidence. *Id.* Once a defendant contests the truth of the plaintiff's jurisdictional allegations, the plaintiff bears the burden to support those allegations with competent proof. *Id.* at 1142.

### 2.   Plaintiffs do not have standing to pursue their claims about Policy 490.700 in this Court

Plaintiffs do not have Article III standing to pursue their claims in this Court. Standing under Article III of the United States Constitution is "a 'bedrock constitutional requirement'" of federal courts' jurisdiction. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). To establish Article III standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Id.* at 380. Because the analysis for causation and redressability are often "'flip sides of the same coin[]' . . . the two key questions in most standing disputes are injury in fact and causation." *Id.* at 381 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008).

An injury in fact must be "an invasion of a legally protected interest" that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To obtain prospective relief, a plaintiff must also establish "a sufficient likelihood of future injury." *All. for Hippocratic Med.*, 602 U.S. at 381.

Causation is generally "easy to establish" when challenging a government regulation that "require[s] or forbid[s] some action by the plaintiff." *Id.* at 382. When plaintiffs challenge

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

5

the government's regulation of someone else, however, it becomes difficult to "link[] their asserted injuries to the government's regulation (or lack of regulation) of someone else." *Id.* at 382. Because plaintiffs generally cannot rely on "'speculation about the unfettered choices made by independent actors not before the courts'" to establish causation, they must instead "show that the 'third parties will likely react in predictable ways' that in turn will likely injure the plaintiffs." *Id.* at 383 (quoting first *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013), and second *California v. Texas*, 593 U.S. 659, 675 (2021)). Even if predictable, however, causation cannot be based "ripple effects" that are far removed from the government action. *Id.* at 383.

The party invoking federal jurisdiction has the burden to demonstrate their standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *Id.* at 431.

### a.    Booher-Smith does not have standing in her own right to challenge Policy 490.700 under the Eighth or Fourteenth Amendments

Booher Smith brings claims for injuries under the cruel and unusual punishment clause of the Eighth Amendment and the equal protection clause of the Fourteenth Amendment. The allegations in her complaint, however, fail to establish standing to bring either claim.

### (1)    Any Eighth Amendment injury to Booher-Smith is not fairly traceable to Policy 490.700

The Eighth Amendment to the United States Constitution protects against the "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). It requires that prison officials "take reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). In a claim alleging failure to prevent harm under the Eighth Amendment, an inmate must show first "that he is

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

6

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

incarcerated under conditions posing a substantial risk of serious harm" and second that the defendant has "a 'sufficiently culpable state of mind.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

Here, assuming for the sake of argument that Booher-Smith's alleged assault and associated distress constitutes an injury-in-fact under the Eighth Amendment, she does not plausibly allege that injury is caused by Policy 490.700's gender-affirming housing provisions. The policy does not require or forbid any action by Booher-Smith. Instead, it establishes a permissive and discretionary process by which transgender individuals may request housing at a facility that aligns with their gender identity—regardless of whether their gender identity is male or female.

Booher-Smith must thus show that third parties will likely react in predictable ways that will likely injure her. *All. for Hippocratic Med.*, 602 U.S. at 383. She instead puts forth a theory of causation that relies on a long chain of speculation. First, a transgender, intersex, or non-binary individual must request a transfer to Washington Corrections Center for Women (WCCW) instead of being content to stay at their present facility. Next, multiple levels of decision-makers must conclude, based on objective safety protocols and consideration of the individual's desired housing assignment, that WCCW is an appropriate housing placement for the individual. That transferred individual must be bigger and stronger than Booher-Smith. They must be housed in a unit at WCCW where they interact with Booher-Smith. They must wish to harm Booher-Smith. Prison officials must know about that risk of harm to Booher-Smith and disregard it. And Booher-Smith must be harmed as a result. None of these steps have predictable outcomes where Booher-Smith is likely to be injured. Further, even if these steps were predictable, they are no more than attenuated "ripple effects" that are insufficient to establish standing. *Id.*; *see also Chandler v. Macomber*, No. 1:21-CV-01657-JLT-HBK, 2026 WL 799916 at *10–12 (E.D. Cal. Mar. 23, 2026) (concluding cisgender women inmates lacked standing to challenge a California statute about housing of transgender inmates in prison).

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

7

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Indeed, Booher-Smith's allegations show that even at the very last link of the chain, injury is still unlikely to occur: three transgender women are housed in her unit, yet she has so little contact with them she has never even had to sit next to one of them to eat. ¶¶ 70–72.[3] Her only negative interaction has been a verbal remark instigated by Booher-Smith's objection to that individual's existence. ¶ 73. Far from establishing standing for her claim, Booher-Smith's complaint demonstrates that even when accepting her allegations about Williams' assault as true, transgender women are not likely to react in predictable ways that will in turn likely cause her injury.

Conversely, eliminating Policy 490.700 would not redress Booher-Smith's injury. It will not prevent women who are bigger or taller than her from being housed at WCCW. It will not prevent other individuals from stalking her or sitting at her lunch table. Nor would it stop anyone from assaulting her without provocation, regardless of their physical stature. And it would not transfer away any transgender women already housed at WCCW. Policy 490.700 is not the cause of Booher-Smith's alleged injuries, and eliminating the policy will not solve them.

**(2)    Booher-Smith has failed to establish injury-in-fact for a violation of her right to equal protection of the law**

The equal protection clause of the Fourteenth Amendment "requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff must show that he was treated in a manner inconsistent with others similarly situated, and that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected

---

[3] Paragraph references herein are to Plaintiffs' Complaint for Compensatory Damages and Injunctive Relief at Dkt. 1.

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

8

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (internal quotations omitted).

Booher-Smith does not show the invasion of a legally protected interest for her equal protection claim. Importantly, Plaintiffs do not allege that that Policy 490.700 treats incarcerated individuals differently on the basis of sex. Nor could they, as the plain text of the policy makes no such distinction. Rather, they allege that the policy "results in disparate treatment on the basis of sex." ¶ 124. This is a disparate impact, not a disparate treatment, claim. And for that, a plaintiff must show "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Booher-Smith makes no such allegations in her complaint, identifying instead only injuries stemming from Williams's "sudden, random, and unprovoked" assault. ¶ 71. This is not sufficient for her equal protection claim.

Even if differential treatment were sufficient, Booher-Smith does not allege that she has personally suffered any harms as a result of any unequal preferences that Policy 490.700 might grant to transgender individuals. She does not allege, for example, that she has requested transfer to another facility and been denied. Nor does she allege she has unsuccessfully requested any medical care or personal items when a transgender individual's similar request has been granted. There is no invasion of her legally protected interests to be free from intentional discrimination because of her membership in a protected class, and she has no standing to pursue an equal protection claim.

      **b.**     **FAIR does not have associational standing to challenge Policy 490.700 under the Eighth or Fourteenth Amendments**

FAIR does not allege facts that establish it has standing to bring its claims. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

9

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). FAIR cannot establish all three elements for either of its claims.

For its Eighth Amendment claim, FAIR cannot establish a member with standing to sue in their own right. As discussed above, Booher-Smith does not have standing to pursue an Eighth Amendment claim regarding Policy 490.700 or related policies and practices. The connection between Policy 490.700 and FAIR's unidentified members is even more tenuous, and the brief reference to them in the complaint does not establish those members would otherwise have standing to sue in their own right.

Even if FAIR did have a member with standing to sue in its own right, however, that would not impart associational standing on FAIR because protecting against cruel and unusual punishment is not germane to FAIR's purpose. FAIR provides no specific information about its purposes or how such purposes are related to this lawsuit. Instead, it rests on generalities, alleging it was established to defend the principle of equal protection and equal rights for all. ¶ 19. It does not identify any purpose with regard to the Eighth Amendment specifically or punishment generally, either in terms of sentencing or conditions of confinement.

FAIR's website further explains it is "committed to challenging threats to civil liberties from identity-based practices." *Our Mission*, FAIR, INC., https://www.fairforall.org/about-us/ (last visited July 25, 2026). It does so "[t]hrough litigation that ensures diversity and inclusion efforts are non-discriminatory" and by "[i]nstigating a cultural shift at the grassroots level that celebrates a broad range of individual traits, talents and experiences and emphasizes equality of opportunity, not outcome." *Id.* The advocacy work FAIR highlights confirms it has no involvement in prison advocacy beyond this case. *See Legal Cases & Whistleblowers*, FAIR INC., https://www.fairforall.org/profiles-in-courage/ (last visited July 25, 2026); *Open Letters*, FAIR INC., https://www.fairforall.org/open-letters/ (last visited July 25, 2026); *Legal Letters &*

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

10

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

*Comments*, FAIR INC., https://www.fairforall.org/legal-letters-comments/ (last visited July 25, 2026). FAIR's purpose is not related to the cruel and unusual punishment clause of the Eighth Amendment.

For the equal protection claim, FAIR again fails to identify any member with standing to sue in their own right. As discussed above, Booher-Smith does not have standing in her own right, and the briefly mentioned anonymous members similarly lack any allegations about an invasion of their legally protected interests under the equal protection clause. To the contrary, FAIR's reliance on allegations made "on information and belief" makes clear that they have no members with personal knowledge of the claimed equal protection violations. ¶¶ 129–136. Any injury is purely conjectural and is insufficient to support FAIR's associational standing.

### 3. Defendants are immune from suit in this Court under the Eleventh Amendment

Not only do Plaintiffs lack standing to sue in this Court, Defendants cannot be sued here either. Under the Eleventh Amendment, states are immune from suit in federal court. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). An action against an agency or an agency official in their official capacity is considered a suit against the state and is barred by the Eleventh Amendment. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999). While Congress can override Eleventh Amendment immunity, it did not do so when enacting 42 U.S.C. § 1983. *Edelman*, 415 U.S. at 675–76. And while a state can waive its Eleventh Amendment immunity, its general waiver of its sovereign immunity is not sufficient to waive Eleventh Amendment immunity. *Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir. 1988). Washington's waiver of sovereign immunity does not constitute a waiver of its Eleventh Amendment immunity. *Rains v. State*, 674 P.2d 165, 170 (Wash. 1983).

Here, the plaintiffs name the defendants as the Department of Corrections and Secretary Tim Lang in his official capacity. They are both the "state" for purposes of the Eleventh Amendment, and thus they cannot be sued in federal court without their consent.

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

11

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

*Ex parte Young*, 209 U.S. 123 (1908), provides a limited exception to Eleventh Amendment immunity, but it does not apply in this case. Under the *Ex parte Young* doctrine, "plaintiffs can sue 'state officers in their official capacities for prospective declaratory or injunctive relief . . . for their alleged violations of federal law.'" *Forward*, 178 F.4th at 473 (alteration in original) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013)). But the state defendant "must have 'some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *Id.* (quoting *Ex Parte Young*, 209 U.S. at 157). Further, the "connection must 'be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Id.* (quoting *Ass'n des Eleveurs*, 729 F.3d at 943).

Plaintiffs fail to identify a "fairly direct" connection between Secretary Lang and actions taken under Policy 490.700. He is never mentioned in their allegations about the policy, and the policy itself shows the secretary is uninvolved in the MDT process or any other routine part of Policy 490.700. *See* Manis Decl., Ex. 1. His only responsibility under the policy is to respond to appeals about decisions made by the headquarters MDT. *Id.* at 9. He does not "enforce" any part of the policy—if taking action under a permissive and discretionary policy could be called enforcement in the first place. Indeed, Plaintiffs appear to recognize the difficulty of casting this as an enforcement action, asking that the Court enjoin the "application" of Policy 490.700 as well. ¶ 142b.

The Ninth Circuit recently rejected just such an attempt to make the state a party by suing the secretary of California's correctional agency in *Forward, Inc. v. Macomber*. The plaintiff there was the owner of a landfill bordering various state properties, including multiple correctional facilities. 178 F.4th at 472. It believed that the state properties were generating hazardous waste contaminating the landfill's groundwater, which interfered with its own

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV
12
ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

groundwater cleanup. *Id.* The landfill owner sued the secretary of California's correctional agency and the director of the state's general services agency. *Id.* It alleged they controlled the generation, handling, storage, and disposal of waste at the neighboring state properties. *Id.* The district court dismissed on Eleventh Amendment grounds, concluding the defendants lacked sufficient control over hazardous waste at the properties to invoke the *Ex Parte Young* exception. *Id.*

The Ninth Circuit affirmed, noting that the crux of the case was "who to sue." *Id.* at 471. With respect to the corrections secretary, the court noted he only had general statutory responsibility for "'the supervision, management and control of the state prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined[.]'" *Id*. at 473 (quoting CAL. PENAL CODE § 5054). The landfill owners further failed to allege "any direct action" by the defendants leading to the claimed injury, such as enforcing federal hazardous waste law, planning or administering waste management, or actually disposing hazardous waste at the facilities. *Id.* at 473–74. Thus, nothing in the complaint established the fairly direct connection to the alleged hazardous waste violations. *Id.* at 474.

So too here. Plaintiffs allege Secretary Lang is responsible for "adopting, implementing, and enforcing policies and procedures" in his role as secretary, pointing to his statutory responsibility for the operation of correctional facilities. ¶ 22 (citing WASH. REV. CODE § 72.09.050). But such a "generalized duty" is not enough to subject him to suit in this Court over Policy 490.700. And Plaintiffs have not alleged any personal action by Secretary Lang, such as overturning a decision from the headquarters MDT on appeal, that would establish a fairly direct connection with enforcement. Plaintiffs' requested relief is targeted at the application of the policy by the Department of Corrections generally, not by Secretary Lang in particular. Their claims are directed against the State and are barred under the Eleventh Amendment.

//

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

13

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Because the Eleventh Amendment immunizes both defendants from suit in this Court, this case should be dismissed.

**B.      This Court Should Dismiss Because Plaintiffs Fail to State a Claim For a Violation of 42 U.S.C. § 1983**

Setting aside the jurisdictional faults in Plaintiffs' complaint, dismissal is also appropriate because Plaintiffs fail to allege facts that state a claim for a violation of 42 U.S.C. § 1983 under either the Eighth or Fourteenth Amendments.

**1.      Standards for dismissal under Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint is subject to dismissal under Rule 12(b)(6) when it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

While a court generally cannot consider matters outside the pleadings on a Rule 12(b)(6) motion, the "incorporation by reference" doctrine permits courts to "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999))

To state a claim for relief under § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In addition to showing a constitutional violation, to satisfy the second prong of a § 1983 claim, a plaintiff must allege facts showing how

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV                                    14                    ATTORNEY GENERAL OF WASHINGTON
                                                                                              Corrections Division
                                                                                    1116 West Riverside Avenue, Suite 100
                                                                                           Spokane, WA 99201-1106
                                                                                               (509) 456-3123

individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer*, 844 F.2d at 633. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.* Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Id.* at 634. Further, a § 1983 suit cannot be based on vicarious liability alone, but must allege the defendant's own conduct violated the plaintiff's civil rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

> **2.    Defendants are not persons within the meaning of 42 U.S.C. § 1983**

Neither the Department of Corrections nor Secretary Lang are proper defendants in this action. A plaintiff bringing claims under 42 U.S.C. § 1983 can maintain those claims only against "persons" acting under color of state law. 42 U.S.C. § 1983. A state entity is not a "person" within the meaning of § 1983, and thus claims against them inherently fail. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). State officials sued in their official capacity for damages are not persons for the purpose of § 1983; only when sued for prospective injunctive relief do they lose their identity as the government that employs them. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (citing *Will*, 491 U.S. at 71 n.10). This is a matter of statutory construction, distinct from the question of Eleventh Amendment immunity. *See Will*, 491 U.S. at 66–67; *Hafer*, 502 U.S. at 30.

Plaintiffs concede the Washington State Department of Corrections is a state agency. ¶ 21. It is therefore not a person for purposes of § 1983, and all claims against the Department of Corrections must be dismissed. Similarly, Plaintiffs sue Secretary Lang only in his official capacity. ¶ 22. He is not a person under § 1983 unless sued for prospective injunctive relief. As such, any claim for monetary damages against him must be dismissed.

//

//

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

15

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

### 3.    Plaintiffs have not alleged the personal participation of Secretary Lang in any constitutional violation

Even if Secretary Lang were a person for the purpose of § 1983, plaintiffs have not alleged any personal participation by him in any constitutional violation.

For a failure to prevent harm claim under the Eighth Amendment, a plaintiff must allege her conditions of confinement pose a substantial risk of serious harm and that the defendant has a culpable state of mind. *See Farmer*, 511 U.S. at 834. The culpable state of mind requires deliberate indifference to a prisoner's risk, specifically that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Further, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiffs do not allege that Secretary Lang consciously disregarded a substantial risk of serious harm that Williams posed to Booher-Smith. There are no allegations in the complaint that Secretary Lang was aware of any risk to Booher-Smith. To the contrary, Plaintiffs concede that the assault was "sudden, random, and unprovoked." ¶ 71. While they allege that Booher-Smith believed Williams had been "stalking" her for weeks, they do not allege that Booher-Smith reported her concerns to anyone at the Department, let alone that those concerns were passed up to the secretary. ¶ 54. And the broader "speculative and generalized fears of harm" alleged by FAIR do not rise to the level of risk necessary for a violation of the Eighth Amendment. *See Williams v. Wood*, 223 Fed. App'x 670, 617 (9th Cir. 2007); *see also Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (explaining that "a mere suspicion that an attack will occur" is insufficient to support an Eighth Amendment claim). Thus, Secretary Lang did not personally participate in any alleged Eighth Amendment violation.

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

16

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

For an equal protection claim under the Fourteenth Amendment a plaintiff must show that she was treated differently than those similarly situated, and that the defendants acted with an intent or purpose to discriminate against her based on her membership in a protected class. *Thornton*, 425 F.3d at 1166. Plaintiffs' complaint is devoid of allegations that Secretary Lang has personally acted with an intent or purpose to discriminate against Booher-Smith or other women at WCCW. And the complaint makes no attempt to plead any personal involvement of Secretary Lang in the treatment or management of transgender individuals. Further, Secretary Lang did not personally review and sign the current version of Policy 490.700, and his only role under the policy is to respond to appeals of decisions made by the headquarters MDT. This is not sufficient to show his personal participation in the alleged equal protection violation.

## V.   CONCLUSION

This Court should dismiss Plaintiffs' complaint because it lacks jurisdiction and Plaintiffs fail to state a claim for relief.

I certify that this memorandum contains 5,271 words, in compliance with the Local Civil Rules.

RESPECTFULLY SUBMITTED this 29th day of July, 2026.

NICHOLAS W. BROWN
Attorney General

s/ Katrina B. Manis
KATRINA B. MANIS, WSBA #58249
Assistant Attorney General
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
509-456-3123
Katrina.Manis@atg.wa.gov

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

17

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

**CERTIFICATE OF SERVICE**

I certify that on the date below I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participant:

ASHLEY DIANE BURMAN
CARNEY BADLEY SPELLMAN PS
burman@carneylaw.com

MARK CHRISTOPHER LAMB
CARNEY BADLEY SPELLMAN PS
mlamb@carneylaw.com

ANDREW ZIMMITTII
AMERICA FIRST POLICY INSTITUTE
azimmitti@americafirstpolicy.com

LEIGH ANN O'NEILL
AMERICA FIRST POLICY INSTITUTE
loneill@americafirstpolicy.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 29th day of July, 2026, at Olympia, Washington.

s/ Erica Sann
ERICA SANN
Paralegal 1
Corrections Division
PO Box 40116
Olympia WA 98504-0116
360-586-1445
Erica.Sann@atg.wa.gov

MOTION TO DISMISS
NO.3:26-CV-05448-RSL-SKV

18

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123