Honorable S. Kate Vaughan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| FOUNDATION AGAINST INTOLERANCE & RACISM, INC. dba FAIR FOR ALL, INC., and FAITH BOOHER-SMITH,<br>Plaintiffs,<br>v.<br>WASHINGTON DEPARTMENT OF CORRECTIONS, and TIM LANG, in his official capacity as Secretary of the Department of Corrections,<br>Defendants. | NO. 3:26-cv-05448-RSL-SKV<br>AMENDED COMPLAINT FOR COMPENSATORY DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF |

## I. INTRODUCTION

1. Washington Department of Corrections ("WDOC") maintains a policy of housing male inmates who claim to identify as females with female inmates within the State's single prison for females. Under this policy, male convicts who self-identify as women are permitted to request a transfer to the prison meant exclusively for females, where they are permitted to share cells, bedrooms, bathrooms, and showers with an all-female population. Although Washington maintains multiple all-male correctional facilities, it no longer maintains a single female-only prison: only females are deprived of the right to serve their sentences in a single-sex sex-segregated facility.

2. The housing of these male inmates with females—including as bunkmates in the same cell—has led to multiple instances of violence and sexual abuse against the female



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

inmates, persistent harassment, and the routine intimidation of female inmates in violation of their fundamental constitutional rights to serve their sentences in safety and without further punishment.

3. Plaintiff Faith Booher-Smith ("Booher-Smith"), who is a member of Foundation Against Intolerance & Racism, Inc. dba Fair for All ("FAIR"), and additional FAIR members located at WCCW, have been injured as a result of WDOC's transgender housing policy, DOC 490.700 (*Transgender, Intersex, and/or Non-Binary Individuals*, (the "Transgender Inmate Policy")), and related policies and practices. Those FAIR members have been physically assaulted, threatened, intimidated, or sexually harassed by male inmates housed with them in the prison designated for females.

4. On August 7, 2025, Booher-Smith was violently attacked by a male inmate named Christopher Williams ("Williams") at the Washington Corrections Center for Women ("WCCW"). Unprovoked, Williams approached her silently from behind and struck her on the side of her face with his fist, then grabbed her hair and threw her to the ground before kicking her repeatedly with such force that she sustained visible injuries, including facial bruising, a laceration in her mouth, and swelling to her jaw and eye.

5. Williams is a six-foot-four, "biologically intact" male and convicted *child* sex offender who was transferred to WCCW after self-identifying as a woman.

6. WDOC has long been aware of the threat Williams and other male inmates pose to females at WCCW. Williams's violent, predatory behavior towards other female inmates led another woman, former inmate Mozzy Clark, to file two lawsuits against WDOC in December 2024. *See Clark v. State of Washington, Dept. of Corrections, et al.*, No. 3:24-cv-06058 (W.D. Wash.); *see also Clark v. State of Washington, et al.*, No. 24-2-13273-8 (W.D. Wash.)

7. As Ms. Clark has alleged, Williams sexually assaulted her for months during the time she was forced to share a cell with him. *Clark*, No. 3:24-cv-06058 (W.D. Wash.),



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Dkt. 1, Compl. ¶ 1. Williams masturbated in front of her, groped her while she slept, and repeatedly threatened her with rape. *Id.* ¶¶ 37–38, 44. During these episodes, prison staff ignored concerns for her safety and even discouraged her from filing official complaints, cautioning her about potential retaliation. *See Clark v. State of Washington, Dept. of Corrections, et al.*, No. 3:24-cv-06058, Document No. 31.

8. WDOC knows well through a series of prior such incidents that violent physical and sexual assaults and harassment are a foreseeable consequence of housing male inmates with females. In the case of Williams, WDOC made the decision to house him at WCCW despite the recommendation of Eric Jackson, Superintendent of Monroe Correctional Complex, a male-only prison in which Williams was previously incarcerated, who advised WDOC against housing Williams at WCCW due to his "serious infraction history and the most recent conviction where Williams assaulted and inflicted serious life-threatening injuries to a female victim."

9. Similarly, in another lawsuit filed in 2023, *Lotusflower v. Headley*, WDOC was placed on notice of the violence committed by a male inmate at WCCW. *See Nonnie Marcella Lotusflower v. Charlotte Headley*, et al. No. 3:2023-cv-0558 (W.D. Wash.), Dkt. 5.

10. In that case, a male inmate named Nathan Goninan—who was convicted for the murder of a 17-year-old girl—violently assaulted another female inmate,[1] after which he was placed in restrictive housing at WCCW. Slatz, *supra* note 1. Before this incident, he had been repeatedly infracted for threatening staff, destroying property, and possessing a weapon. *See Nonnie Marcella Lotusflower v. Charlotte Headley, et al*. No. 3:2023-cv-0558 (W.D.

---

[1] According to the news outlet *Reduxx*, which reported on the assault on December 30, 2024, WDOC camera footage showed Goninan punching a female inmate in the face. *See* Anna Slatz, *Exclusive: Trans-Identified Male Inmate Launches Human Rights Lawsuit Against Washington Women's Prison After Being Accused of Sexually and Physically Assaulting Female Inmates*, REDUXX (Dec. 30, 2024), https://reduxx.info/exclusive-trans-identified-male-inmate-launches-human-rights-lawsuit-against-washington-womens-prison-after-being-accused-of-sexually-and-physically-assaulting-female-inmates/.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Wash.).

11. There, senior WDOC official Deborah Wofford, Deputy Assistant Secretary of the Women's Division, acknowledged that Goninan was an "unmitigated threat to the safety of other incarcerated individuals," had made serious threats of bodily harm toward staff, and exhibited "overtly threatening and aggressive behavior" that was "not typical" of individuals incarcerated at WCCW. Slatz, *supra* note 1.

12. Despite these repeated acts of violence against female inmates, WDOC continues to house male inmates at WCCW out of a confoundingly religious adherence to the Transgender Inmate Policy. The result is an environment of threats, violence, and chaos in a State-maintained penitentiary established to house and rehabilitate *female* prisoners.

13. Plaintiff Booher-Smith and the other female members of FAIR who are incarcerated at WCCW live in constant fear of the physically stronger and larger incarcerated men the Transgender Inmate Policy forces them to live among. Their complaints about this unsafe environment have been mocked, ignored, and even retaliated against by prison officials, and WDOC has taken no meaningful action to address these concerns and ensure their safety.

14. Plaintiff Booher-Smith and FAIR therefore bring this action to protect her and FAIR's members from ongoing unconstitutional conditions and to seek declaratory and injunctive relief against the Official-Capacity Defendants' continued housing of male inmates at WCCW. Plaintiff Booher-Smith separately seeks compensatory damages from the individual capacity Defendants for the physical and emotional injuries she personally suffered.

## II. JURISDICTION AND VENUE

15. This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, as Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 by depriving them, under color of state law, of rights, privileges, and immunities secured by the



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Eighth and Fourteenth Amendments, all of which claims raise federal questions and seek redress for deprivations of rights protected by federal law.

16. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to the claims alleged herein occurred and are occurring in this district.

17. This Court has the authority to award the requested injunctive relief and damages under 28 U.S.C. § 1343(a); declaratory relief under 28 U.S.C. § 2201, and the injunctive and other relief requested under 28 U.S.C. § 2202, and the authority to award reasonable attorney's fees and costs under 42 U.S.C. § 1988, and/or any other applicable source of law.

## III. PARTIES

18. Plaintiff Faith Booher-Smith is and has been at all times relevant herein a prisoner in the Washington Corrections Center for Women ("WCCW") located in Gig Harbor, Washington. She is twenty-eight years old. Booher-Smith is also, and was at the time this action was commenced, a member of Plaintiff FAIR.

19. Plaintiff FAIR is a nonprofit organization established under the laws of New York to defend the principle of equal protection and equal rights for all. FAIR engages in legal advocacy and grassroots organization to protect equal protection, free expression, and other fundamental civil liberties. FAIR has members, including Plaintiff Booher-Smith, who have been injured or face an ongoing risk of injury as a result of Defendants' challenged conduct.

20. FAIR brings this action on behalf of its members for declaratory and injunctive relief. FAIR has associational standing because at least one of its members, Plaintiff Booher-Smith, would otherwise have standing to sue in her own right, the interests FAIR seeks to protect in this action are germane to FAIR's organizational purpose, and neither the claims asserted nor the prospective relief FAIR seeks requires the participation of each affected member.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

21. The Washington State Department of Corrections ("WDOC") is an agency of the State of Washington and manages prisons and other detention facilities across the state of Washington, including WCCW. WDOC is not a named defendant.

22. Defendant Tim Lang is the Secretary of the Department of Corrections and is responsible for the operation of all adult state correctional institutions. *See* RCW 72.09.050. In that capacity, he is required to exercise all powers and perform all duties prescribed by law with respect to the administration of Washington's prisons, including adopting, implementing, and enforcing policies and procedures that ensure people in DOC custody are provided with necessary care and safe conditions. He has the authority to delegate authority and direct activities of subordinate officers and other DOC employees. Further still, DOC 490.700 is an internal agency policy which the Secretary has the authority to revoke or amend at any time. At all times relevant to this action, Defendant Lang was acting under color of state law and is sued in his official capacity.

23. Defendant Scott Russell, Deputy Secretary of the Department of Corrections is the WDOC official who, under the Transgender Inmate Policy, makes the final decision on all requests for "gender-affirming housing." *See* DOC Policy 490.700 §§ VI. B–E. The Deputy Secretary at all relevant times acted under color of state law and is sued in his official capacity for declaratory and prospective injunctive relief.

24. Defendants John/Jane Does 1-10 are the WDOC officials who reviewed, recommended, and/or gave final approval to the transfer of Christopher Williams to WCCW notwithstanding the written recommendation of Superintendent Eric Jackson against that transfer, as alleged in ¶¶ 8 and 55. This includes the following officials, identified by the positions they held under the version of DOC Policy 490.700 in effect at the time of Williams's transfer: Defendants Does 1–4, the members of the facility multidisciplinary team ("MDT") who reviewed Williams's request and recommended his transfer on Form DOC 02-384; Defendants Does 5–8, the members of the Headquarters MDT who reviewed and



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

concurred in that recommendation on Form DOC 02-422; Defendant Doe 9, the Headquarters MDT Chair who made the final housing determination approving Williams's transfer on Form DOC 02-385; and Defendant Doe 10, the official or officials responsible for reviewing Williams's continued placement at WCCW following his post-transfer infractions and the December 2024 Clark lawsuits. Under the Policy and its implementing forms, each official who reviewed, recommended, or approved Williams's transfer was required to review his complete housing protocol file, which contained Superintendent Jackson's written recommendation against the transfer and Williams's infraction and conviction history. Their identities are presently unknown to Plaintiffs and will be substituted upon identification. Each acted under color of state law and is sued in their individual capacity for compensatory damages.

## IV. GENERAL FACTUAL ALLEGATIONS

25. The WCCW is a prison operated by the Washington State Department of Corrections established for female prisoners.

26. According to the Washington State government website, WCCW is a minimum, medium, and close-custody security level prison.[2]

27. Washington law assigns convicts to correctional institutions on the basis of sex. Revised Code of Washington § 72.02.250 states that "all female persons convicted in the superior courts of a felony and sentenced to a term of confinement, shall be committed to the Washington correctional institution for women." The statute does not provide a mechanism for men to be committed to WCCW. No statute does.

28. In any event, DOC adopted the Transgender Inmate Policy, which permits

[2] Department of Corrections, Washington State: Washington Corrections Center for Women. Date accessed: April 14, 2026. Available at: https://doc.wa.gov/about-doc/locations/prison-facilities/washington-corrections-center-women-wccw.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

inmates to request "gender-affirming[3] housing," among other accommodations. It states:

> At any time, an individual may voluntarily submit DOC 02-420 Preferences Request to their case manager designating their preferred name, pronoun(s), gender, to conduct searches/urinalysis, and gender identity, and to **request gender-affirming state-issued garments and/or placement in gender-affirming housing.**

DOC Policy 490.700 § VI (2023)(emphasis added).

29. Under the Policy, when an inmate requests transfer to a "gender-affirming facility," they must fill out the *Gender-Affirming Housing Request* section of Form DOC 02-420. The Associate Superintendent or Correctional Program Manager then reviews that request for "risk factors" and forwards the materials to the Psychology Department for review. The facility's multidisciplinary team ("MDT") makes a recommendation using Form DOC 02-384, and the final housing decision is made by the Deputy Secretary. *(See* DOC Policy 490.700 §§ VI. B–E (2023)).

30. The form to be filled out by the requesting inmate, Form DOC 02-420, asks the following questions of the inmate:

> I am requesting placement at:
>
> I believe this is a better housing placement for me because:
>
> I will benefit from placement at my requested facility by:
>
> My concerns about placement at my requested facility are:
>
> My history will indicate potential risk to the population at my requested facility because:

---

[3] "Gender-affirming," as used in WDOC policy and in this Complaint, refers to medical interventions and accommodations intended to modify or override an individual's biological sex characteristics in order to align with an asserted gender identity (also referred to herein as "sex-rejecting" or "elective cosmetic" procedures and interventions).



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

I will reduce this potential risk by:

Any other factors that the Multi-Disciplinary Team (MDT) should consider:

31. DOC 02-420 asks *the requesting inmate* whether his placement in a prison for females would pose a "potential risk" to the female population there. But at the same time, WDOC has no form or procedure to elicit the same information from the female inmates who would have to share prison housing with the requesting male. Additionally, there is no similar policy or form for female inmates to request to be housed only with other females.

32. WDOC also does not ask the requesting inmate whether he is taking cross-sex hormones or has undergone (or intends to undergo) sex-trait modification surgeries, for how long—if at all—the male has identified as a female, or even what the requesting male's sexual orientation is, as a prerequisite to considering a transfer to the prison for female inmates. Men with fully male testosterone levels and intact male genitalia therefore are eligible and may be permitted to reside in prison spaces designated exclusively for biological women, including bathrooms, shower facilities, and bedrooms.

33. In fact, nothing in the Policy even prohibits a male who is sexually attracted to females—let alone a male convicted of raping females— from ultimately sharing an unsupervised cell with a female inmate, so long as he claims to "identify" as a woman.

34. This is indeed what has happened and continues to happen at WCCW. Male inmates known to Plaintiffs who are attracted to females and who make no effort to conform to a female "gender identity" are permitted to be housed at WCCW, share a cell with female inmates, enter the bathrooms and other intimate spaces designated for females, and even have sexual relations with female inmates.

35. In effect, a heterosexual male inmate may obtain transfer to a facility meant for females by self-identifying as a woman by simply checking a box on a form without any investigation by WDOC or diligence into the genuineness of that inmate's claimed gender



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

identity. Because there is no objective metric to evaluate a person's self-declared "gender identity," WDOC staff must grant transfer requests based purely on the inmate's stated responses, however ingenuine.

36. In other words, WDOC's commitment to following its Transgender Inmate Policy is so unwavering and strict that it has transferred and will likely continue to transfer male inmates to WCCW without regard to the realities and risks of placing male inmates in a female-only penitentiary. This is how and why Plaintiffs, female inmates at WCCW, have become powerless victims of WDOC's Transgender Inmate Policy.

37. WDOC minimizes legitimate safety concerns posed by introducing males into a female-only prison by claiming that fears of trans-identifying male violence in those facilities are based on a "myth," stating: "A common myth perpetuated about people who are transgender is that they will commit crimes of assault against vulnerable populations. This is not the case."[4] As the incidents detailed in this complaint readily demonstrate, that assertion is a blatant lie.

38. Female-only prisons were established in the first place precisely because females were vulnerable when forced to co-habit with incarcerated males.

39. When a male inmate self-proclaims an identity as a woman, he does not miraculously shed his male physical characteristics. He remains, on average, taller, larger, and stronger than female inmates.[5] Therefore, in the prison setting, where inmates cannot escape state-imposed conditions, females are forced to live every waking moment at a dangerous

---

[4] Department of Corrections, Washington State. April 13, 2023. *News Spotlight: DOC Transgender Housing Policy*, *https://doc.wa.gov/news/2023/news-spotlight-doc-transgender-housing-policy*.

[5] In September 2023, the American College of Sports Medicine published an expert consensus in the sports medicine community on the physiological advantages of male athletes over females due to physical strength and size. Suzanne K. Hunter et al., *The Biological Basis of Sex Differences in Athletic Performance: Consensus Statement for the American College of Sports Medicine*, 55 Med. & Sci. Sports & Exerc. 2328 (2023), https://pubmed.ncbi.nlm.nih.gov/37772882/.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

disadvantage.

40. Not only are males typically stronger, larger, and faster than females of similar age, but WCCW was designed to house offenders whose physical and behavioral profiles reflect the lower security needs of a female population.

41. WCCW was designed to maintain order and safety for a female inmate population, which generally requires less restrictive physical security than prisons for males. Its facilities are modeled accordingly: more relaxed and accessible housing units; female guards and officers; and facilities structured for lower risk individuals, including areas such as children's playrooms for visiting family in a shared recreation space that any inmate can enter, unrestrained.

42. Introducing male inmates into a facility meant only for females also is particularly challenging and destabilizing for the corrections officers responsible for maintaining order and safety for staff and inmates. Officers at female prisons—many of whom are female, themselves—are typically trained for a lower-risk population. With male inmates in the mix, they must suddenly manage inmates whose physical capacities demand greater control measures, which can exceed the capabilities of on duty corrections officers.

43. When Plaintiff Booher-Smith was assaulted, for example, the only guard present in the room, a female, was dwarfed by the six-foot-four Williams. The female corrections officer froze, screaming in fear for her safety, while Booher-Smith was struck repeatedly.

44. Females in prison, compared with males, also tend to be disproportionately impacted by domestic violence, and to have suffered, and be vulnerable to, emotional and sexual abuse.

45. One survey conducted by the Bureau of Justice Statistics found that 57.2 percent of females in state prison (39.9% in federal prison) reported they had been abused at least once before their current admission to prison, while the comparative figure for males



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

was 18.7% (9.5% in federal prison). Caroline Harlow, *Prior Abuse Reported by Inmates and Probationers* (U.S. Dep't of Justice, Bureau of Justice Statistics 1999).

46. Trans-identifying males, in particular, also introduce a heightened level of risk to the female inmate population. Data obtained through a FOIA request to the Federal Bureau of Prisons (BOP) shows that between May 2024 and January 2025 approximately 51% of male transgender-identifying inmates were incarcerated for sex offenses.[6] This percentage is nearly *four times higher* than the rate of sex-offenses within the general male population. Housing such males with statistically higher rates of sexual violence records in a prison for females creates a known and an unacceptable risk of bodily harm to female inmates. The risk of severe harm is magnified when considering that the female population, which is already vulnerable to sexual abuse, also faces the severe and unique risks of pregnancy.

47. In California, which implemented a "gender-affirming" housing policy nearly identical to WDOC's, the California Department of Corrections and Rehabilitation reported that 33.8% of transgender-identifying male inmates seeking transfer to female-only facilities were registered sex offenders.[7] And Canada's 2022 *Correctional Service Research Report: Examination of Gender Diverse Offenders* found that out of 99 "gender diverse" inmates surveyed, one-third had a history of sex offenses (which reflects U.S. data), 81.8 percent of those crimes were committed by trans-identifying males,[8] *and most of those victims were*

---

[6] Keep Prisons Single Sex, News: Federal BOP Transgender Inmate Report (Jan. 2025), https://usa.kpssinfo.org/federal-bop-transgender-inmate-report-january-2025/.

[7] California Department of Corrections and Rehabilitation, Division of Correctional Policy Research and Internal Oversight, Office of Research. February 9, 2022. *Number of Offenders Who Identify as Transgender…Seeking Transfer to Female Facilities and Percentage Who are Registered Sex Offenders or Convicted of a Sex Offense*. (accessible at: https://usa.kpssinfo.org/wp-content/uploads/2022/02/CDCR-Response-on-Data-of-Offenders-Seeking-Transfer-to-Female-Facilities.pdf).

[8] MacDonald, Shanna, et al. *Examination of Gender Diverse Offenders. Correctional Service of Canada*. 2022. (accessible at: https://publications.gc.ca/collections/collection_2022/scc-csc/PS83-3-442-eng.pdf).



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

*females* (54.5%) (compared to just 6% male-only victims (remaining population including both sexes)).

48. There is evidence that male prisoners who identify as women are more likely to be sexually predatory than male prisoners overall. Out of the 125 male prisoners who identify as women counted in the United Kingdom in 2017, 60 had been convicted of sexual offenses, including 27 convicted of rape (BBC News, 2018).[9] In the overall prison population, by comparison, 19% of males had been convicted of sexual crimes (which is approximately the same in the United States, according to the Department of Justice's Bureau of Statistics).

49. WDOC's Transgender Inmate Policy exposes female inmates to a population statistically more likely of having committed a sexual offense, and only females can become pregnant as a result of these offenses. The Transgender Inmate Policy exposes biological women to a documented, disproportionate and unjustified risk of harm, which a female-only prison has historically existed to prevent.

50. Two female inmates at a prison designated for females in New Jersey became pregnant after reportedly having sex with a transgender-identifying male inmate (who was convicted for stabbing his father twenty-seven times).[10] Transgender-identifying male inmates frequently have sex with female inmates at WCCW, too, and WCCW is aware of this. Bryan Kim, who was convicted for the murder of his parents, was found having sex with his female cellmate in 2024.[11] And Mozzy Clark was sexually assaulted by Christopher Williams, the same male that attacked Booher-Smith. *See Mozzy Clark v. State of Washington, Department*

---

[9] BBC News, *How Many Transgender Prisoners Are There?, BBC News* (Aug. 13, 2018), https://www.bbc.com/news/uk-42221629.

[10] Dana Kennedy, *Trans Prisoner Who Impregnated Two Female Inmates Is 'Psychopath': Foster Mom,* New York Post (Aug. 5, 2022), https://nypost.com/2022/08/05/trans-prisoner-who-impregnated-two-women-is-psychopath/.

[11] *Trans-Identifying Male in Women's Prison Reportedly Discovered Having Sex with Female Inmate*, N.Y. POST (Mar. 23, 2024), https://nypost.com/2024/03/23/us-news/trans-identifying-male-in-womens-prison-reportedly-discovered-having-sex-with-female-inmate/.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

*of Corrections, et al.*, 3:24-cv-06058, Dkt. 1.

51. Since 2024, FAIR volunteers have been in contact with female inmates at WCCW regarding reports of sexual assault and emotional distress arising from WDOC's Transgender Inmate Policy. FAIR then launched an advocacy campaign aimed at addressing the issue of housing male inmates in facilities meant exclusively for females.

52. FAIR informed WDOC of a "pattern of discrimination against female inmates due to DOC policies and practices" that "depriv[e] female prisoners of equal protection under the Constitution[,] constituting cruel and unusual punishment under the 8th Amendment." Specifically, FAIR wrote:

> Due to biological and sociological differences, females are vulnerable to physical and emotional harm in ways males are not. For example, females are generally smaller and have less upper and lower body strength than males. Additionally, only females can become pregnant. Incarcerated females are also at least six times more likely than males to have been sexually abused by males before entering the prison system. These differences mean that any policy allowing prisoners to select housing based on gender identity, rather than biological sex, inherently results in discriminatory treatment of females.
>
> For example, a female inmate reported being forced to share a cell with a male prisoner who identifies as transgender. The male prisoner was allowed to select housing based on gender identity, resulting in being housed with female prisoners. This scenario, driven by DOC policy, eliminates the possibility of a female-only facility, thereby depriving female inmates of the benefit of selecting housing with only other females. The presence of a larger, stronger male who can impregnate her heightens the female inmate's trauma, especially if she has a history of being raped or otherwise sexually or physically assaulted. Most importantly, the female prisoner in this scenario is literally at risk of being



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

impregnated by another prisoner, a risk that does not exist in a female-only facility

53. FAIR continued to relay its concerns to Washington state officials, including Defendant Tim Lang, informing him of dozens of Resolution Requests filed by female inmates reporting their suffering caused by the Transgender Inmate Policy. No meaningful action was taken to amend the Policy.

54. In addition to being aware of the general danger WDOC officials were exposing female inmates to as a result of the Transgender Inmate Policy, WDOC officials were also aware of the dangers certain males requesting transfer to the prison for females posed to female inmates, yet allowed their transfer to WCCW anyway, in order to accommodate their "gender identity."

55. For example, while reviewing Christopher Williams' transfer request, Eric Jackson, Superintendent of Monroe Correctional Complex (the male prison Williams was requesting transfer out of) recommended against transferring him to the prison for females due to the fact that Williams was convicted of inflicting life-threatening injuries "*to a female victim*." The Superintendent's recommendation was not heeded, however, and Williams was allowed to reside at WCCW, where he subsequently sexually assaulted Mozzy Clark, and beat Plaintiff Booher-Smith.

56. Defendants John/Jane Does 1-10 consciously disregarded Williams' history of violent and sexual infractions, and Superintendent Jackson's recommendation in recommending and approving the transfer of Williams to WCCW, despite the substantial risk of serious harm to the women residing there. Similarly, WDOC officials did nothing to subsequently remove Williams from WCCW after his continued infractions following the transfer.

**A. Booher-Smith's Assault**

57. On August 7, 2025, Williams (approximately 6'4") approached Booher-Smith



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

and tried to sit at her table in the cafeteria. For weeks, Booher-Smith had noticed Williams stalking her through the unit and watching her, which made her feel threatened and anxious.

58. Inmates at WCCW are assigned a row in the cafeteria and once they are seated they are not permitted to move seats. On this occasion Williams walked up to and sat at Booher-Smith's table after she had already taken a seat. Booher-Smith told him she was uncomfortable in his presence, and stood up to leave.

59. Booher-Smith left to heat her food. While microwaving her meal, her back was turned to the room. As she waited by the microwave, she felt a sudden, sharp impact on the side of her face. Before she could react, she was struck again in the face.

60. Booher-Smith turned and saw that her attacker was Williams. She understood that because of Williams's size and strength as a man, she had no realistic ability to defend herself. She was knocked to the ground as Williams seized her hair and kicked her repeatedly while other inmates screamed for help.

61. The only officer in the room, Officer Solomon (whose first name is unknown), screamed and froze, but did not intervene. Back up security was unable to intervene as well because it took time for the security team to be buzzed in through a security portal to the cafeteria.

62. Officer Solomon, an elderly female guard, later apologized to Booher-Smith, admitting she "feared for her own safety" during the incident.

63. By the time that WCCW staff were able to respond, the assault was already over, and Booher-Smith, bleeding from the face and mouth, had suffered lasting injuries.

64. Booher-Smith was immediately taken to the medical unit at WCCW and given acetaminophen to treat her pain. The Primary Encounter Report notes bruising on the scalp and redness on the eye and face from where she was struck by Williams.

65. Three (3) days later, on August 11, 2025, Booher-Smith was treated for post-assault acute pain in her jaw. The Emergency Response Record records that, three days after



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

the assault, Booher-Smith's lower jaw remained swollen from her injuries.

66. Since the attack in August, Booher-Smith has continued to suffer from heightened anxiety. She now participates in trauma therapy to manage the lasting emotional impact of the assault and of WCCW's failure to protect her.

67. On August 12, 2025, Booher-Smith submitted a Resolution Request regarding WDOC's Transgender Inmate Policy. A Resolution Request is an inmate's only tool to make a formal, recorded complaint or request regarding WDOC conditions. She wrote: "I was attacked from behind by a born male being savagely hit and [] thrown to the ground being kicked and punched with no chance to defend myself. I am traumatized not only by the incident but by staff's lack of response….I don't feel safe. I'm having nightmares and anxiety attacks." In substance, Booher-Smith's Resolution Request sought the benefit the Policy denies to female inmates; namely, a safe, female-only living environment.

68. On August 27, 2025, the Resolution Specialist administratively withdrew Booher-Smith's request, stating: "Your concern is being looked into outside the Resolution office…When a concern is being investigated/reviewed by a different entity than the Resolution dept we will close out the resolution so as not to interfere."

69. Receiving no update from the "outside" investigation, Booher-Smith submitted another Resolution Request on September 23, 2025, again requesting that WDOC stop putting females at risk through its application of the Transgender Inmate Policy. "I am afraid, anxious, continually on guard…. What about my safety and security?"

70. On September 29, 2025, WDOC simply responded that her concerns were forwarded for consideration at the next regular WDOC policy review.

71. Despite clear notice of the assault and the threat posed by housing male inmates among females, WCCW still has made no apparent policy changes to protect Booher-Smith or other female inmates. There was no increase in security or supervision in her unit, no assurance that male inmates would be restricted from the living areas meant only for females,



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

and no special effort made to protect Booher-Smith or other inmates from similar attacks. Booher-Smith remains uncertain whether staff would intervene if she were attacked by a male inmate again.

72. Nothing has changed in the wake of the violent assault on Booher-Smith. No additional security measures have been implemented at WCCW to segregate male inmates from female inmates, boost security, or otherwise ensure that violent attacks like the one perpetrated on Booher-Smith do not recur. Nor has a single, meaningful change been made to WDOC's Transgender Inmate Policy. Presumably, WDOC is more concerned with its religious adherence to the Policy than it is with protecting its female inmates like Booher-Smith. As a result, Booher-Smith remains at risk of another violent attack in an environment that appears to condone male-on-female violence in a prison meant for females.

73. Indeed, on information and belief, WDOC currently houses at least five male inmates at WCCW under the challenged policy and related practices. Plaintiff Booher-Smith personally knows of at least three such male inmates who are housed in her immediate living environment at WCCW: one in the same pod as Booher-Smith and two in the same unit. Because these male inmates share a pod or unit with her, Booher-Smith is required to occupy the same physical spaces with them during ordinary daily activities, including while walking to chow, standing in line for food, and sitting in the chow hall.

74. These repeated, unavoidable encounters cause Booher-Smith substantial fear and anxiety, particularly because the violent assault she previously suffered at WCCW was sudden, random, and unprovoked. She fears that she may be forced to sit beside one of these male inmates at chow and that another spontaneous assault could occur.

75. At least one of the male inmates recently directed a hostile and intimidating remark at Booher-Smith, after it became known in the unit that Booher-Smith had been objecting to the housing of male inmates with female inmates at WCCW.

76. On at least one occasion one of the male inmates followed Booher-Smith into



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

the female restroom. Fearing for her safety, Booher-Smith hid in a locked cubicle until he departed.

77. Accordingly, Booher-Smith's injury is not limited to the past assault by Williams. She remains subject to ongoing exposure to the challenged policy and to continuing fear, anxiety, and risk of further harm as a result of Defendants' decision to house male inmates in her immediate living environment.

**B. Females Denied State-Funded Medical Services Afforded to Trans-Identifying Males**

78. In addition to exposing females to documented, obvious danger, in violation of the Eighth Amendment, the Transgender Inmate Policy also discriminates against females by providing preferential treatment for males.

79. WDOC provides sex-rejecting procedures and services to trans-identifying male inmates, including surgeries and procedures such as breast implants and reconstruction and vaginoplasty. In addition, WDOC provides "gender-affirming" clothing and property to trans-identifying males in prison in a timely manner, and develops and implements policies to ensure that trans-identifying males may shower and change clothing separately and out of view from other individuals. *See Disability Rights Washington v. Washington, Dept. of Corrections, et al.*, No. 2:23-cv-1553, U.S. District Court for the Western District of Washington. Dkt. 3-1, 9.

80. These services are not provided to females. A female inmate cannot simply request privacy from males in shower areas or choose "gender affirming housing," i.e., housing with only other females. If a female inmate has breast cancer removal surgery, the state will not provide "gender affirming" breast reconstruction surgery afterward. Yet a male who identifies as a woman can receive that procedure on the taxpayer's dime so long as he claims to be transgender.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

81. Trans-identifying male inmates also enjoy streamlined access to new cosmetics such as make-up, clothes, bras, and underwear that female inmates must request repeatedly and are often denied (and have to pay for themselves). A female inmate's desire to "affirm her gender" in prison is not given the same treatment as trans-identifying males under WDOC policy. Indeed, WDOC goes out of its way to accommodate the males.

82. The WDOC policy ignores and deemphasizes the needs of female inmates in the very environment the State created to account for their particular needs. The result is demoralizing, humiliating, neglectful, and harmful.

**C. Additional FAIR Member Injuries**

83. As discussed above, Plaintiff Booher-Smith is, and was at the time this action commenced, a member of FAIR.

84. FAIR also has additional female members incarcerated at WCCW who have suffered, or face an ongoing risk of suffering, similar injuries from Defendants' challenged conduct. Those members are not named individually in this Complaint in order to protect them from retaliation and unnecessary disclosure of sensitive personal, medical, and psychological information.

85. FAIR Member A is an elderly, wheelchair-bound female with serious orthopedic impairments. In or about May 2023, a male inmate assaulted her while transporting her to a medication appointment after demanding that she give him some of her medication. When she refused, he grabbed and twisted her arm and wrist and threatened further harm. She required hospital treatment following the assault and continues to suffer pain and functional impairment.

86. FAIR Member B is a survivor of sexual assault who suffers from post-traumatic stress disorder. In or about September 2024, a male inmate repeatedly stalked, intimidated, and verbally threatened her throughout WCCW, including at a medical clinic, aggravating her PTSD and causing severe emotional distress.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

87. FAIR Member C suffers from PCOS, a medical condition that has led to hormonal imbalances, undesirable hair growth/loss, and skin discoloration. FAIR Member C's requests for hormonal therapy to treat her symptoms have been repeatedly denied. By contrast, male inmates at WCCW are routinely provided hormone replacement therapy as "gender affirming care." According to public disclosures, WDOC spent over $200,000 on hormone replacement therapy treatments between 2022 and 2024 for male inmates at WCCW.

## V. CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 – Violation of the Eighth Amendment – Declaratory and Prospective Injunctive Relief
### (All Plaintiffs Against the Official-Capacity Defendants)

88. Plaintiffs repeat and incorporate by reference each of the preceding paragraphs and allegations as if fully set forth herein.

89. At the time of the relevant events, Plaintiffs had an established right under the Eighth Amendment of the United States Constitution to protection from cruel and unusual punishments, which is made applicable to the states through the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976).

90. Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's health or safety. Deliberate indifference occurs when an "official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

91. Further, where a prison authority ignores a condition of confinement that is "sure or very likely to cause serious illness and needless suffering," a court can find an Eighth Amendment violation. *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

92. Official-Capacity Defendants have engaged and continue to engage in conduct, as set forth above, that places male inmates in the Washington Corrections Center for Women, while simultaneously ignoring, disregarding, and dismissing complaints of sexual



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

harassment, assault, intimidation, and violence that have ensued as a foreseeable result of their failure to segregate incarcerated people on the basis of sex. As a result, Plaintiff Booher-Smith has suffered physical and emotional injury, and Booher-Smith and FAIR's members are subjected to an ongoing and substantial risk of serious harm in violation of the Eighth Amendment.

93. The Transgender Inmate Policy devised, implemented, and maintained by the Official-Capacity Defendants reflects deliberate indifference to the safety of Plaintiff Booher-Smith and FAIR's members.

94. As a further direct and proximate result of these unconstitutional actions and practices, Plaintiff Booher-Smith has suffered physical injury, severe emotional distress, anxiety, humiliation, and fear. And FAIR's members continue to face intimidation, fear, and ongoing exposure to unconstitutional conditions of confinement.

95. Official-Capacity Defendants knew, from prior litigation, incident reports, Resolution Requests, their own MDT deliberations, direct complaints by FAIR, and Booher-Smith's own assault and follow-up complaints, that housing male inmates at WCCW created a substantial risk of serious harm to female inmates. Despite that notice, Defendants maintained the challenged policy and failed to implement basic protective measures or materially alter the policy after violent assaults and continuing threats.

96. Plaintiff Booher-Smith seeks declaratory and prospective injunctive relief. .

97. FAIR seeks declaratory and prospective injunctive relief on behalf of its members, including Booher-Smith.

98. Plaintiffs have no adequate remedy at law and do and will suffer serious and irreparable harm to their constitutional rights unless the Official-Capacity Defendants are enjoined from enforcing the Transgender Inmate Policy.

99. Pursuant to 42 U.S.C. §§ 1983, 1988, Plaintiffs are entitled to declaratory relief, and temporary, preliminary, and permanent injunctive relief, invalidating and



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

restraining enforcement of the Transgender Inmate Policy, and their reasonable legal fees and costs.

**COUNT II**

**42 U.S.C. § 1983 – Violation of the Eighth Amendment – Compensatory Damages (Plaintiff Booher-Smith Against All Individual Capacity Defendants)**

100. Plaintiff Booher-Smith repeats and incorporates the preceding allegations as though fully set forth herein.

101. Defendants John/Jane Does 1-10 knew of and disregarded a substantial risk of serious harm to the female inmates at WCCW, including Booher-Smith, in that each reviewed, recommended, or approved the transfer of Christopher Williams to WCCW with knowledge of Superintendent Jackson's written recommendation against the transfer, of Williams's serious infraction history, and of his conviction for inflicting serious, life-threatening injuries on a female victim, as alleged above. Each nonetheless caused or permitted Williams to be housed among the female population at WCCW.

102. Defendants John/Jane Does 1-10, despite knowledge from prior litigation, incident reports, Resolution Requests, their own MDT deliberations, and direct complaints by FAIR and Booher-Smith, took no action to increase security or institute measures to protect female inmates such as Booher-Smith from the increased risk of violent or sexual assault.

103. As a direct and proximate result of each such Defendant's deliberate indifference, Booher-Smith suffered the violent assault of August 7, 2025 and the physical injuries, pain, emotional distress, anxiety, humiliation, and fear alleged above. Plaintiff Booher-Smith is entitled to compensatory damages against Defendants John/Jane Does 1-10 in their individual capacities, and to her reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

**COUNT III**

**42 U.S.C. § 1983 – Violation of the Equal Protection Clause of the Fourteenth Amendment – Declaratory and Prospective Injunctive Relief (All Plaintiffs Against the Official-Capacity Defendants)**



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

104. Plaintiffs incorporate the preceding allegations as though fully set forth herein.

105. Despite documented histories of violent misconduct by certain transferred male inmates—including repeated infractions and prior assaults— the Official-Capacity Defendants have chosen to devote institutional resources to accommodating those inmates, while failing to address the medical and safety needs of female inmates.

106. The Equal Protection Clause of the Fourteenth Amendment prohibits state officials from intentionally treating similarly situated individuals differently on the basis of sex unless the government can demonstrate an "exceedingly persuasive justification" for that sex-based distinction, and the means employed are substantially related to the achievement of that objective. *United States v. Virginia*, 518 U.S. 515, 533 (1996). Prisoners are entitled to the protections of the Equal Protection Clause no less than other citizens. *See, e.g., Davis v. Powell*, 901 F. Supp. 2d 1196, 1220 (S.D. Cal. 2012).

107. WDOC's Transgender Inmate Policy classifies inmates on the basis of sex in operation, and allocates its burdens and benefits on the basis of sex. Only female inmates bear the risk of pregnancy as a result of sexual assault. Females are also less likely to be violent offenders than male inmates and are more likely to have suffered as victims of sexual assault before their conviction. Prisons designed for females, such as WCCW, are not equipped or staffed to address the security threats created by male inmates. Security lapses, such as Officer Solomon's failure to intervene in Williams's assault of Booher-Smith, show the danger and unequal conditions females suffer as a result of the Policy.

108. Plaintiffs have suffered emotional distress, intimidation, sexual harassment, and physical violence at the hands of trans-identifying male inmates, all due to the Policy.

109. WDOC's policy gives preference to the personal safety, privacy accommodations, and sex-specific benefits of male inmates identifying as transgender, while shifting the corresponding risks and burdens onto female inmates at WCCW.

110. Male inmates in male facilities face no comparable threat from transferred



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

female inmates, and Plaintiffs are unaware of any female inmates being transferred under the Policy, regardless. The Policy's burdens fall entirely on the female inmates of WCCW, the sole facility designated by the Legislature as single sex. Washington's multiple male facilities retain their single-sex character.

111. WDOC also allocates benefits unequally. Male inmates transferred into WCCW receive immediate access to sex-rejecting treatments, accommodations, and specialized facilities. Female inmates, meanwhile, endure untreated reproductive injuries, delays and denials in emergency and other medically-necessary care, and are required to purchase basic feminine hygiene products out of pocket.

112. On information and belief, female inmates at WCCW routinely experience delays in emergency medical treatment, denials of medically necessary surgical procedures—including but not limited to mastectomies, lumpectomies, and hysterectomies—and delays in critical diagnostic testing such as cancer screenings and medical imaging. These delays and denials occur even where treating providers have identified the procedures as medically indicated.

113. Additionally, on information and belief, WDOC provides hormone therapy to trans-identifying male inmates as part of sex-rejecting treatment, while female inmates who require hormone replacement therapy for medically indicated conditions—including post-menopausal symptoms—are denied or experience substantial barriers to obtaining such treatment.

114. By contrast, WDOC has adopted formalized policies, procedures, and institutional commitments governing the provision of sex-rejecting elective cosmetic surgery and interventions to trans-identifying inmates, including structured review processes and dedicated resources designed to facilitate access to such care, including surgical interventions. *See generally Disability Rights Washington*, No. 2:23-cv-1553, U.S. District Court for the Western District of Washington. Document Dkt. 3-1.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

115. These processes ensure timely and prioritized consideration of sex-rejecting intervention requests in a manner not afforded to female inmates seeking treatment for serious medical conditions.

116. Additionally, on information and belief, WDOC routinely categorizes medically necessary care for female inmates as “elective” or “non-urgent,” resulting in delay or denial of treatment. At the same time, sex-rejecting procedures for trans-identifying male inmates are approved and prioritized under standards that are no more urgent—and in many cases less urgent or entirely unnecessary—than the care denied to female inmates.

117. More than that, on information and belief ,while WDOC provides female inmates with only basic hygiene products, such as standard tampons and sanitary pads, female inmates must pay out of pocket for products of adequate quality or differing absorbency levels. By contrast, WDOC provides trans-identifying male inmates with a wide range of additional personal items and accommodations—including specialized undergarments, cosmetics, grooming devices, and body-modifying accessories—at state expense and without comparable out-of-pocket requirements.

118. On information and belief, WDOC further authorizes and provides access to medications and treatments for trans-identifying male inmates that address cosmetic or non-urgent concerns, while female inmates are denied or experience substantial delays in obtaining treatment for medically necessary conditions, including dental care and other essential services.

119. Additionally, on information and belief, WDOC provides additional institutional support and incentives to trans-identifying male inmates, including enhanced mental health services and prioritized access to treatment pathways. Comparable resources and prioritization are not afforded to female inmates seeking care for serious medical conditions.

120. The Policy’s design and implementation reveal a deliberate choice to shift risk



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

and institutional burdens onto females in order to confer advantages on trans-identifying male inmates. This is an intentional sex-based preference that the Equal Protection Clause does not permit.

121. The Transgender Inmate Policy has been maintained and repeatedly reaffirmed in spite of its effect upon female inmates. Despite the Clark lawsuits alleging sexual assault by a Policy transferee (¶¶ 6–7, 50); the Lotusflower litigation and Deputy Assistant Secretary Wofford's acknowledgment that a Policy transferee posed an "unmitigated threat" (¶¶ 9–11); FAIR's written notice to Defendant Lang of a pattern of discrimination against female inmates (¶¶ 52–53); dozens of Resolution Requests filed by female inmates (¶ 53); and the violent assault on Booher-Smith herself (¶¶ 57–70), at each juncture, the Defendants chose to continue allocating the Policy's benefits to male inmates and its burdens to female inmates.

122. Plaintiff Booher-Smith has suffered physical harm, emotional distress, intimidation, fear, and unequal treatment as a result of Defendants' sex-based policy choices. FAIR's members likewise continue to face an ongoing risk of unequal treatment and associated harm.

123. FAIR seeks declaratory and prospective injunctive relief on behalf of its members, including Booher-Smith.

124. Plaintiffs have no adequate remedy at law and have already and will continue to suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from enforcing the Transgender Inmate Policy.

125. Pursuant to 42 U.S.C. §§ 1983, 1988, Plaintiffs are entitled to declaratory relief, and temporary, preliminary, and permanent injunctive relief, invalidating and restraining enforcement of the Transgender Inmate Policy, and their reasonable legal fees and costs.

**COUNT IV**
**42 U.S.C. § 1983 – Violation of the Equal Protection Clause of the Fourteenth Amendment – Compensatory Damages**



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

**(Plaintiff Booher-Smith Against the Individual Capacity Defendants)**

126. Plaintiff Booher-Smith repeats and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

127. Defendants John/Jane Does 1-10, acting under color of state law, subjected Booher-Smith to the sex-based unequal treatment alleged in Count III by approving the housing of male inmates among the female population at WCCW while no corresponding benefit or protection was available to her, proximately causing the injuries alleged in ¶¶ 57–77. Booher-Smith is entitled to compensatory damages against Defendants John/Jane Does 1–10 in their individual capacities and to her reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

128. WHEREFORE, Plaintiffs hereby pray that the Court grant the following relief:

a. Declare, pursuant to 28 U.S.C. §§ 2201–2202, that Defendants' adoption, implementation, enforcement, and maintenance of DOC Policy 490.700 and related policies and practices, insofar as they authorize or result in the housing of male inmates at WCCW with female inmates, violate the Eighth and Fourteenth Amendments to the United States Constitution;

b. Enjoin Defendant Tim Lang and Defendant Scott Russell, in their official capacity, and their officers, agents, employees, successors, and all persons acting in concert or participation with them, from enforcing or applying DOC Policy 490.700 and related policies and practices in a manner that permits male inmates to be housed at WCCW or otherwise requires female inmates at WCCW to share cells, sleeping quarters, bathrooms, showers, or other comparable intimate living spaces with male inmates;

c. Award Plaintiff Faith Booher-Smith compensatory damages, in an amount to be determined at trial, for the physical injuries, pain and suffering,



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

emotional distress, fear, anxiety, humiliation, trauma, and other injuries she personally suffered as a result of Defendants' unconstitutional conduct, against any Defendant as to whom such damages are legally available;

d. Award Plaintiff Faith Booher-Smith nominal damages in the alternative, or in addition where otherwise appropriate, for the violation of her constitutional rights;

e. Award Plaintiffs their reasonable attorneys' fees, litigation expenses, and costs as authorized by law;

f. Retain jurisdiction to enforce and, if necessary, clarify or implement the declaratory and injunctive relief entered in this action; and

g. Grant such other and further relief as the Court deems just, equitable, and proper.

**JURY DEMAND**

Plaintiffs hereby demand trial by Jury on all claims so triable.

DATED this August 18, 2026.

*By:* ________________________
Mark C. Lamb, WSBA No. 30134
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone: (206) 622-8020
Facsimile: (206) 467-8215
mlamb@carneylaw.com
*Counsel for Plaintiffs*

*By: s/ Ashley D. Burman*
Ashley D. Burman, WSBA No. 58754
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone: (206) 622-8020
Facsimile: (206) 467-8215
burman@carneylaw.com

*Counsel for Plaintiffs*

By: *s/ Leigh Ann O'Neill*
Leigh Ann O'Neill (*pro hac vice*)
AMERICA FIRST POLICY INSTITUTE
2401 S. University Drive
Fort Worth, TX 76109
Tel.: (703) 637-3690
LOneill@americafirstpolicy.com
*Counsel for Plaintiffs*

By: : *s/ Andrew Zimmitti*
Andrew Zimmitti (*pro hac vice*)
AMERICA FIRST POLICY INSTITUTE
1455 Pennsylvania Ave., N.W., Suite 225
Washington, D.C. 20004
Tel.: (703) 637-3690
azimmitti@americafirstpolicy.com
*Counsel for Plaintiffs*

By: *s/ Isaac A. Loring*
Isaac A. Loring (*pro hac vice*)
AMERICA FIRST POLICY INSTITUTE
1455 Pennsylvania Ave., N.W., Suite 225
Washington, D.C. 20004
Tel.: (571) 267-9672
iloring@americafirstpolicy.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington that I am an employee at Carney Badley Spellman, P.S., over the age of 18 years, not a party to nor interested in the above-entitled action, and competent to be a witness herein. On the date stated below, I caused to be served a true and correct copy of the foregoing document on the below-listed attorney(s) of record by the method(s) noted:

☒ Court e-filing website, which sends notification of such filing to the following:

***Attorneys for Defendants:***

Heather R. Straub, WBSA No. 35348
Katrina B. Manis, WSBA No. 58249
Noelle Green, WSBA No. 58629
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
Tel.: (509) 456-3123
Heather.Straub@atg.wa.gov
Katrina.Manis@atg.wa.gov
Noelle.Green@atg.wa.gov

DATED this August 18, 2026.

Alicia E. Macklin, Legal Assistant
macklin@carneylaw.com



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020