HONORABLE JUDGE ROBERT LASNIK
MAGISTRATE JUDGE S. KATE VAUGHAN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| FOUNDATION AGAINST INTOLERANCE & RACISM INC. DBA FAIR FOR ALL, INC, and FAITH BOOHER-SMITH<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON DEPARTMENT OF CORRECTIONS, and TIM LANG,<br><br>Defendants. | NO. 3:26-cv-05448-RSL-SKV<br><br>MOTION TO DISMISS AMENDED COMPLAINT<br><br>NOTING DATE: NOVEMBER 12, 2026<br><br>WITHOUT ORAL ARGUMENT |

## I. INTRODUCTION

Defendants Tim Lang and Scott Russell respectfully request the Court dismiss Plaintiffs' complaint for compensatory damages and injunctive relief. The Plaintiffs lack standing to bring their claims; the Defendants are immune from suit in this Court; and the complaint fails to allege a civil rights violation in any event. This Court should dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (6).

//

//

//



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

## II. TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. TABLE OF CONTENTS ........ 2

III. BACKGROUND ........ 3

A. The Department Allows Transgender, Nonbinary, and Intersex Individuals to Request Gender-Affirming Housing, But It Does Not Automatically Grant Those Requests ........ 3

IV. ARGUMENT ........ 4

A. This Court Should Dismiss Because It Lacks Subject Matter Jurisdiction ........ 4

1. Standards for dismissal under Federal Rule of Civil Procedure 12(b)(1) ........ 4

2. Plaintiffs do not have standing to pursue their claims about Policy 490.700 in this Court ........ 5

a. Booher-Smith does not have standing in her own right to challenge Policy 490.700 under the Eighth or Fourteenth Amendments ........ 6

i. Any Eighth Amendment injury to Booher-Smith is not fairly traceable to Policy 490.700 ........ 6

ii. Booher-Smith has failed to establish injury-in-fact for a violation of her right to equal protection of the law ........ 8

b. FAIR does not have associational standing to challenge Policy 490.700 under the Eighth or Fourteenth Amendments ........ 10

i. FAIR lacks any purpose germane to the interests protected by the Eighth Amendment ........ 10

ii. FAIR's members lack standing to sue in their own right for a violation of the equal protection clause ........ 11

3. Defendants are immune from suit in this Court under the Eleventh Amendment ........ 12

B. This Court Should Dismiss Because Plaintiffs Fail to State a Claim for a Violation of 42 U.S.C. § 1983 ........ 14

1. Standards for dismissal under Federal Rule of Civil Procedure 12(b)(6) ........ 14

2. Plaintiffs fail to state a claim upon which relief can be granted against either Secretary Lang or Deputy Secretary Russell ........ 16

V. CONCLUSION ........ 18




ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

## III. BACKGROUND

### A. The Department Allows Transgender, Nonbinary, and Intersex Individuals to Request Gender-Affirming Housing, But It Does Not Automatically Grant Those Requests

Incarcerated individuals in the custody of the Department may request placement gender-affirming housing, which is housing at facility whose designation as a men's prison or women's prison aligns with the individual's gender identity. Dkt. 20-1 at 8.[1] The Department asks the individual to explain why their requested housing placement will be better for them, how they will benefit from the requested placement, and any concerns they have about the placement. Dkt. 20-2 at 3.[2] It also asks them to reflect on how their history will indicate a potential risk to the population at the requested facility and how they will reduce that risk. *Id.*

The individual's request is then reviewed by a multidisciplinary team (MDT) at the individual's present facility. Dkt. 20-1 at 9. Each facility has an MDT that ensures all individuals under the Department's jurisdiction have equal access to programs and services. *Id.* at 5. The team includes the facility's correctional program manager, the captain, a medical provider, a mental health provider, a Prison Rape Elimination Act (PREA) specialist, and the individual's assigned case manager or that person's supervisor. *Id.* The team makes recommendations about housing assignments for transgender individuals based on objective safety protocols and consideration of the individual's desired housing assignment. In line with federal PREA regulations, *see* 28 C.F.R. § 115.42, the individual's own views about personal safety are considered when making recommendations about their housing. Dkt. 20-1 at 6.

The headquarters MDT then reviews the housing recommendation from the facility. *Id.* at 9. The headquarters MDT consists of the appointing authority from the facility to which a

---

[1] A court may consider documents incorporated by reference into the complaint without converting a motion to dismiss under 12(b)(6) to a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Plaintiffs explicitly incorporate this policy by reference at ¶¶ 28–29 of their complaint. *See* Dkt. 23.

[2] Plaintiffs explicitly incorporate this form by reference at ¶¶ 29–31 of their complaint. *See* Dkt. 23.



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

transfer is recommended (typically the superintendent), the chief medical officer for the Department or their designee, the director of mental health, the chief of psychiatry, the senior director of comprehensive case management or their designee, the director of Security and Emergency Management, the director of PREA services, and others as needed on a case by-case bases. *Id.* at 6. After the headquarters MDT makes a recommendation, the Deputy Secretary or their designee makes the final decision on housing. *Id.* at 7, 9.

If an individual's request for gender-affirming housing is denied, the individual may submit a subsequent request at their next classification review. *Id.* at 9. They may also appeal housing decisions, either to the appropriate deputy assistant secretary for decisions made by the facility MDT or to the secretary for decisions made by the headquarters MDT. *Id.* at 10.

The Department's gender-affirming housing procedures are documented in policy number DOC 490.700, Transgender, Intersex, and/or Non-Binary Individuals ("Policy 490.700"). *See* Dkt. 20-1. The secretary's sole responsibility under the policy is responding to appeals of housing decisions made by the headquarters MDT. *Id.*

## IV. ARGUMENT

### A. This Court Should Dismiss Because It Lacks Subject Matter Jurisdiction

The Court does not have jurisdiction over this case. Plaintiffs lack standing to advance their claims under Article III of the United States Constitution, and Defendants are immune from suit in this Court under the Eleventh Amendment.

#### 1. Standards for dismissal under Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a court must dismiss a case over which it lacks subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). Where a plaintiff lacks standing to invoke the jurisdiction of the federal courts, dismissal under Rule 12(b)(1) is appropriate. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024). Immunity under the Eleventh Amendment is also a proper basis for dismissal under Rule 12(b)(1). *See Forward, Inc. v. Macomber*, 178 F.4th 470, 472 (9th Cir. 2026).



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

A jurisdictional challenge may be facial or factual. *Bowen*, 118 F.4th at 1142 n.6. A facial challenge admits the truth of the allegations in the complaint but asserts they are insufficient to invoke federal jurisdiction. *Id.* A factual challenge disputes the truth of the plaintiff's allegations, usually through outside evidence. *Id.* Once a defendant contests the truth of the plaintiff's jurisdictional allegations, the plaintiff bears the burden to support those allegations with competent proof. *Id.* at 1142. Although Defendants contest the truth of some of the Plaintiffs' allegations, they do so by reference to documents incorporated by reference into Plaintiffs' own complaint, leaving this a facial challenge.

**2. Plaintiffs do not have standing to pursue their claims about Policy 490.700 in this Court**

Plaintiffs do not have Article III standing to pursue their claims in this Court. Standing under Article III of the United States Constitution is "a 'bedrock constitutional requirement'" of federal courts' jurisdiction. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). To establish Article III standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Id.* at 380. Because the analysis for causation and redressability are often "'flip sides of the same coin[]' . . . the two key questions in most standing disputes are injury in fact and causation." *Id.* at 381 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008)).

An injury in fact must be "an invasion of a legally protected interest" that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To obtain prospective relief, a plaintiff must also establish "a sufficient likelihood of future injury." *All. for Hippocratic Med.*, 602 U.S. at 381.

Causation is generally "easy to establish" when challenging a government regulation that "require[s] or forbid[s] some action by the plaintiff." *Id.* at 382. When plaintiffs challenge



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

the government's regulation of someone else, however, it becomes difficult to "link[] their asserted injuries to the government's regulation (or lack of regulation) of someone else." *Id.* at 382. Because plaintiffs generally cannot rely on "'speculation about the unfettered choices made by independent actors not before the courts'" to establish causation, they must instead "show that the 'third parties will likely react in predictable ways' that in turn will likely injure the plaintiffs." *Id.* at 383 (quoting first *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013), and second *California v. Texas*, 593 U.S. 659, 675 (2021)). Even if predictable, however, causation cannot be based "ripple effects" that are far removed from the government action. *Id.*.

The party invoking federal jurisdiction has the burden to demonstrate their standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *Id.* at 431.

**a. Booher-Smith does not have standing in her own right to challenge Policy 490.700 under the Eighth or Fourteenth Amendments**

Booher-Smith brings claims for injuries under the cruel and unusual punishment clause of the Eighth Amendment and the equal protection clause of the Fourteenth Amendment. The allegations in her complaint, however, fail to establish standing to bring either claim.

**i. Any Eighth Amendment injury to Booher-Smith is not fairly traceable to Policy 490.700**

The Eighth Amendment to the United States Constitution protects against the "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). It requires that prison officials "take reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). In a claim alleging failure to prevent harm under the Eighth Amendment, an inmate must show first "that he is



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

incarcerated under conditions posing a substantial risk of serious harm" and second that the defendant has "a 'sufficiently culpable state of mind.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

Here, assuming for the sake of argument that Booher-Smith's alleged assault and associated distress constitutes an injury-in-fact under the Eighth Amendment, she does not plausibly allege that injury is caused by Policy 490.700's gender-affirming housing provisions. The policy does not require or forbid any action by Booher-Smith. Instead, it establishes a permissive and discretionary process by which other individuals may request housing at a facility that aligns with their gender identity—regardless of whether their gender identity is male or female.

Booher-Smith must thus show that third parties will likely react in predictable ways that will likely injure her. *All. for Hippocratic Med.*, 602 U.S. at 383. She instead puts forth a theory of causation that relies on a long chain of speculation. First, a transgender, intersex, or non-binary individual must request a transfer to Washington Corrections Center for Women (WCCW) instead of being content to stay at their present facility. Next, multiple levels of decision-makers must conclude, based on objective safety protocols and consideration of the individual's desired housing assignment, that WCCW is an appropriate housing placement for the individual. That transferred individual must be bigger and stronger than Booher-Smith. They must be housed in a unit at WCCW where they interact with Booher-Smith. They must wish to harm Booher-Smith. Prison officials must know about that risk of harm to Booher-Smith and disregard it. And Booher-Smith must be harmed as a result. None of these steps have predictable outcomes where Booher-Smith is likely to be injured. Further, even if these steps were predictable, they are no more than attenuated "ripple effects" that are insufficient to establish standing. *Id.*; *see also Chandler v. Macomber*, No. 1:21-cv-01657-JLT-HBK, 2026 WL 799916, at *10–12 (E.D. Cal. Mar. 23, 2026) (concluding cisgender women inmates lacked standing to challenge a California statute about housing of transgender inmates in



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

prison); *Clark v. Simons*, No. 3:24-cv-06058-TMC, 2026 WL 2730613, at *1 n.1 (W.D. Wash. Sept. 16, 2026) (concluding that a transgender inmate's "gender identity alone" was immaterial to plaintiff's Eighth Amendment claims).

Indeed, Booher-Smith's allegations show that even at the very last link of the chain, injury is still unlikely to occur: three transgender women are housed in her unit, yet she has so little contact with them she has never even had to sit next to one of them to eat. ¶¶ 73–74.[3] Booher-Smith's purely subjective fear notwithstanding, her only negative interactions have been a verbal remark instigated by Booher-Smith's objection to that individual's existence and Booher-Smith's subjective fear. ¶¶ 75–76. Far from establishing standing for her claim, Booher-Smith's complaint demonstrates that even when accepting her allegations about Williams' assault as true, transgender women are not likely to react in predictable ways that will in turn likely cause her injury.

Conversely, eliminating Policy 490.700 would not redress Booher-Smith's injury. It will not prevent women who are bigger or taller than her from being housed at WCCW. It will not prevent other individuals from stalking her or sitting at her lunch table. Nor would it stop anyone from assaulting her without provocation, regardless of their physical stature. And it would not transfer away any transgender women already housed at WCCW. Policy 490.700 is not the cause of Booher-Smith's alleged injuries, and eliminating the policy will not solve them.

**ii. Booher-Smith has failed to establish injury-in-fact for a violation of her right to equal protection of the law**

The equal protection clause of the Fourteenth Amendment "requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff must show that he was treated in

---

[3] Paragraph references herein are to Plaintiffs' Amended Complaint for Compensatory Damages, Declaratory and Injunctive Relief at Dkt. 23.



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

a manner inconsistent with others similarly situated, and that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (internal quotations omitted).

Booher-Smith does not show the invasion of a legally protected interest for her equal protection claim. Importantly, Plaintiffs do not allege that that Policy 490.700 facially treats incarcerated individuals differently on the basis of sex. Nor could they, as the plain text of the policy makes no such distinction. Rather, they allege that the policy "classifies inmates on the basis of sex *in operation*[.]" ¶ 107 (emphasis added). This is a disparate impact, not a disparate treatment, claim. And for that, a plaintiff must show "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Booher-Smith makes no such allegations in her complaint, identifying instead only injuries stemming from Williams's "sudden, random, and unprovoked" assault. ¶ 74. This is not sufficient for her equal protection claim.

Even if differential treatment were sufficient, Booher-Smith does not allege that she has personally suffered any harm as a result of any unequal preferences that Policy 490.700 might grant to transgender individuals. She does not allege, for example, that she has requested transfer to another facility and been denied. Nor does she allege she has unsuccessfully requested any medical care or personal items when a transgender individual's similar request has been granted. There is no invasion of her legally protected interests to be free from intentional discrimination because of her membership in a protected class, and she has no standing to pursue an equal protection claim.



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

### b. FAIR does not have associational standing to challenge Policy 490.700 under the Eighth or Fourteenth Amendments

FAIR does not allege facts that establish it has standing to bring its claims. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). FAIR cannot establish all three elements for either of its claims.

#### i. FAIR lacks any purpose germane to the interests protected by the Eighth Amendment

For its Eighth Amendment claim, FAIR cannot establish a member with standing to sue in their own right. As discussed above, Booher-Smith does not have standing to pursue an Eighth Amendment claim regarding Policy 490.700 or related policies and practices. The connection between Policy 490.700 and FAIR's unidentified members is even more tenuous, and the brief references to them in the complaint does not establish those members would otherwise have standing to sue in their own right.

Even if FAIR did have a member with standing to sue in their own right, however, that would not impart associational standing on FAIR because protecting against cruel and unusual punishment is not germane to FAIR's purpose. FAIR provides no specific information about its purposes or how such purposes are related to this lawsuit. Instead, it rests on generalities, alleging it was established to defend the principle of equal protection and equal rights for all. ¶ 19. It does not identify any purpose with regard to the Eighth Amendment specifically or punishment generally, either in terms of sentencing or conditions of confinement.

FAIR's website further explains it is "committed to challenging threats to civil liberties from identity-based practices." *Our Mission*, FAIR, INC., https://www.fairforall.org/about-us/



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

(last visited July 25, 2026). It does so "[t]hrough litigation that ensures diversity and inclusion efforts are non-discriminatory" and by "[i]nstigating a cultural shift at the grassroots level that celebrates a broad range of individual traits, talents and experiences and emphasizes equality of opportunity, not outcome." *Id.* The advocacy work FAIR highlights confirms it has no involvement in prison advocacy beyond this case. *See Legal Cases & Whistleblowers*, FAIR INC., https://www.fairforall.org/profiles-in-courage/ (last visited July 25, 2026); *Open Letters*, FAIR INC., https://www.fairforall.org/open-letters/ (last visited July 25, 2026); *Legal Letters & Comments*, FAIR INC., https://www.fairforall.org/legal-letters-comments/ (last visited July 25, 2026). FAIR's purpose is not related to the cruel and unusual punishment clause of the Eighth Amendment.

**ii. FAIR's members lack standing to sue in their own right for a violation of the equal protection clause**

For the equal protection claim, FAIR again fails to identify any member with standing to sue in their own right. As discussed above, Booher-Smith does not have standing in her own right. FAIR briefly mentions Member C's denial of unspecified hormonal therapy to treat hormonal imbalances caused by PCOS, but it does not allege that the denial is based on Member C's sex. Instead, they allege that hormone *replacement* therapy is provided to male inmates as part of gender-affirming care at WCCW. But the fact that a different medical treatment is provided to a different population to treat a different condition is not a sex-based distinction. And FAIR fails to allege that any treatment differences exist because of, not merely in spite of, their adverse impact on Member C and others similarly situated. *See Feeney*, 442 U.S. at 279. Indeed, FAIR's reliance on allegations made "on information and belief" makes clear that they have no members with personal knowledge of the claimed equal protection violations. ¶¶ 112–19. Any member injury is insufficient to support FAIR's associational standing for an equal protection claim.



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Further, Member C's claimed injuries are not caused by Policy 490.700, nor would invalidating Policy 490.700 redress her injuries. Policy 490.700 does not dictate how the Department treats PCOS or prescribes hormonal therapy generally or hormone replacement therapy specifically. The only mention of medical treatment in the policy is the broad directive that transgender, non-binary, and intersex incarcerated individuals will receive health care per the Department health plan and treatment guidelines. Policy 490.700 is not the reason why Member C has been denied hormonal therapy to treat PCOS, nor is the policy the reason why other incarcerated individuals have received hormone replacement therapy to treat other conditions. Because Member C cannot demonstrate her standing to sue in her own right, FAIR lacks associational standing for an equal protection claim.

**3. Defendants are immune from suit in this Court under the Eleventh Amendment**

Not only do Plaintiffs lack standing to sue in this Court, Defendants cannot be sued here either. Under the Eleventh Amendment, states are immune from suit in federal court. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). An action against an agency or an agency official in their official capacity is considered a suit against the state and is barred by the Eleventh Amendment. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999). While Congress can override Eleventh Amendment immunity, it did not do so when enacting 42 U.S.C. § 1983. *Edelman*, 415 U.S. at 675–76. And while a state can waive its Eleventh Amendment immunity, its general waiver of its sovereign immunity is not sufficient to waive Eleventh Amendment immunity. *Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir. 1988). Washington's waiver of sovereign immunity does not constitute a waiver of its Eleventh Amendment immunity. *Rains v. State*, 674 P.2d 165, 170 (Wash. 1983).

Here, the plaintiffs name as defendants Secretary Tim Lang and Deputy Secretary Scott Russell in their official capacities. They are both the "State" for purposes of the Eleventh Amendment, and thus they cannot be sued in federal court without their consent.



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

*Ex parte Young*, 209 U.S. 123 (1908), provides a limited exception to Eleventh Amendment immunity, but it does not apply in this case. Under the *Ex parte Young* doctrine, "plaintiffs can sue 'state officers in their official capacities for prospective declaratory or injunctive relief . . . for their alleged violations of federal law.'" *Forward*, 178 F.4th at 473 (alteration in original) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013)). But the state defendant "must have 'some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *Id.* (quoting *Ex Parte Young*, 209 U.S. at 157). Further, the "connection must 'be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Id.* (quoting *Ass'n des Eleveurs*, 729 F.3d at 943).

Neither defendant has a direct connection to enforcement of Policy 490.700 because there is simply nothing in the policy to enforce against the plaintiffs. Even with regard to housing decisions for transgender individuals, the policy is permissive and discretionary. Transfer of a transgender incarcerated individual is never mandatory and occurs only after extensive consideration of the individual's transfer request by multiple levels of decisionmakers. Indeed, Plaintiffs appear to recognize the difficulty of casting this as an enforcement action, asking that the Court enjoin the "application" of Policy 490.700 as well. ¶ 128b.

But a simple connection with the challenged policy is not enough; recent Ninth Circuit decisions reaffirm that enforcement of the challenged provision is the key focus for the *Ex parte Young* exception. *See Rivera v. Sami*, ___ F.4th ___, 2026 WL 2653094, at *4 (9th Cir. Sept. 9, 2026) (holding that promulgation of a challenged regulation with mandatory directives is distinct from enforcement of the regulation); *Forward*, 178 F.4th at 473–74 (holding that the corrections secretary's general responsibility for facility management was



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

insufficiently connected to groundwater pollution and rejecting the dissent's theory that "violation" cases were distinct from "enforcement" cases under the *Ex parte Young* exception).

Even if mere connection without enforcement were enough to satisfy the *Ex parte Young* exception, that connection does not exist between Secretary Lang and Policy 490.700. He is never mentioned in Plaintiffs' allegations about the policy, and the policy itself shows the secretary is uninvolved in the MDT process or any other routine part of Policy 490.700. *See* Dkt. 20-1. His only responsibility under the policy is to respond to appeals about decisions made by the headquarters MDT. *Id.* at 10. He does not "enforce" any part of the policy—if taking action under a permissive and discretionary policy could be called enforcement in the first place.

Plaintiffs' requested relief is targeted at the application of the policy by the Department of Corrections generally, not the enforcement of the policy by either Secretary Lang or Deputy Secretary Russell. Their claims are directed against the State and are barred under the Eleventh Amendment.

**B. This Court Should Dismiss Because Plaintiffs Fail to State a Claim for a Violation of 42 U.S.C. § 1983**

Setting aside the jurisdictional faults in Plaintiffs' complaint, dismissal is also appropriate because Plaintiffs fail to allege facts that state a claim for a violation of 42 U.S.C. § 1983 under either the Eighth or Fourteenth Amendments.

**1. Standards for dismissal under Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint is subject to dismissal under Rule 12(b)(6) when it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

While a court generally cannot consider matters outside the pleadings on a Rule 12(b)(6) motion, the "incorporation by reference" doctrine permits courts to "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in original) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999)).

To state a claim for relief under § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In addition to showing a constitutional violation, to satisfy the second prong of a § 1983 claim, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer*, 844 F.2d at 633. Where a plaintiff seeks only injunctive or declaratory relief against prison officials, a court "focus[es] on whether the combined acts or omissions of the state officials" created conditions that violate the constitution. *Id.* The approach, however, "undeniably focuses on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have caused the constitutional deprivation." *Id.* Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Id.* at 634. Further, a § 1983 suit cannot be based on vicarious liability alone, but must allege the defendant's own conduct violated the plaintiff's civil rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

**2. Plaintiffs fail to state a claim upon which relief can be granted against either Secretary Lang or Deputy Secretary Russell**

For a failure to prevent harm claim under the Eighth Amendment, a plaintiff must allege her conditions of confinement pose a substantial risk of serious harm and that the defendant has a culpable state of mind. *See Farmer*, 511 U.S. at 834. The culpable state of mind requires deliberate indifference to a prisoner's risk, specifically that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Further, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiffs do not allege that the Defendants consciously disregarded a substantial risk of serious harm that Williams posed to Booher-Smith. There are no allegations in the complaint that Secretary Lang or Deputy Secretary Russell was aware of any risk to Booher-Smith. To the contrary, Plaintiffs concede that the assault was "sudden, random, and unprovoked." ¶ 74. While they allege that Booher-Smith believed Williams had been "stalking" her for weeks, they do not allege that Booher-Smith reported her concerns to anyone at the Department, let alone that those concerns were passed up to agency leadership. ¶ 57. And they do not allege that either defendant was aware of Williams' history or involved in the decision to house Williams at a women's prison. *See* ¶ 55.

Further, the "general danger" about which Plaintiffs allege they alerted DOC officials is not enough to sustain an Eighth Amendment claim. *See* ¶ 54. First, "speculative and generalized fears of harm" do not rise to the level of risk necessary for a violation of the Eighth Amendment. *See Williams v. Wood*, 223 Fed. App'x 670, 617 (9th Cir. Mar. 1, 2007) (unpublished); *see also Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (explaining that "a mere suspicion that an attack will occur" is insufficient to support an Eighth Amendment


ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

claim). Second, Policy 490.700 plainly requires consideration of safety risks when making housing decisions, and this type of reasonable response to a risk of harm does not violate the Eighth Amendment. *See Farmer*, 511 U.S. at 844. Third, FAIR does not allege it alerted Department officials to the risk of dayroom assaults, the harm which actually befell Booher-Smith; rather, its quoted letter identifies the risk of sexual violence and pregnancy. ¶ 52. Thus, Plaintiffs fail to state a claim for a violation of the Eighth Amendment against either defendant.

For an equal protection claim under the Fourteenth Amendment a plaintiff must show that she was treated differently than those similarly situated, and that the defendants acted with an intent or purpose to discriminate against her based on her membership in a protected class. *Thornton*, 425 F.3d at 1166. As discussed above, *see* Section A.2.a.ii, because Policy 490.700 plainly does not classify inmates on the basis of sex, Plaintiff's equal protection claim relies on a theory of disparate impact, which requires a showing that the Defendants acted because of, not in spite of, Policy 490.700's impact on an identifiable group. *Feeney*, 442 U.S. at 279.

Here, Plaintiffs' complaint is devoid of allegations that Secretary Lang or Deputy Secretary Russell, individually or combined, have personally acted with an intent or purpose to discriminate against Booher-Smith or other women at WCCW. And the complaint makes no attempt to allege that either defendant's duties or responsibilities include the treatment or management of transgender individuals beyond their general supervisory authority. Rather, Plaintiffs allege that the defendants "have chosen to devote institutional resources" in a way that impacts men and women differently. ¶ 105. This is insufficient to state a claim for a violation of the equal protection clause of the Fourteenth Amendment, and the claim should be dismissed.

//

//

//

//



ATTORNEY GENERAL OF WASHINGTON
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

## V. CONCLUSION

This Court should dismiss Plaintiffs' complaint because it lacks jurisdiction and Plaintiffs fail to state a claim upon which relief can be granted.

I certify that this memorandum contains 5,381 words, in compliance with the Local Civil Rules.

RESPECTFULLY SUBMITTED this 15th day of October, 2026.

NICHOLAS W. BROWN
Attorney General

*s/ Katrina B. Manis*
KATRINA B. MANIS, WSBA #58249
SEAN F. O'QUINN, WSBA #40135
NOELLE GREEN, WSBA #58629
Assistant Attorneys General
Corrections Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
509-456-3123
Katrina.Manis@atg.wa.gov
Sean.OQuinn@atg.wa.gov
Noelle.Green@atg.wa.gov